### HOLBROOK v. MOORE, Collector.

(District Court, E. D. Missouri, E. D. February 8, 1921.)

No. 5161.

1. Internal revenue ☞7—Additional compensation to president of corporation held taxable as "income" during year in which credited.

Additional compensation to the president of a corporation, allowed as a credit on the corporation's books in December, 1913, against overdrafts by the president, was taxable as income of the year 1913, under Income Tax Act Oct. 3, 1913, where, though the compensation was for previous years and the overdrafts were made in reliance on a previous promise for additional compensation, the amount of the compensation was undeter-

mined, and it was not certain that it would be paid until it was actually so credited.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

**2. Corporations ☞308(3)—Taking credit on corporation's income tax return held to preclude claim that order awarding president additional compensation was not approved by required number of directors.**

Where a corporation, in its income tax return, took credit for additional compensation credited on its books to its president, who was also a director and its active manager, the corporation was foreclosed from claiming that the order of the board of directors allowing such compensation was not approved by requisite number of directors.

At Law. Action by W. J. Holbrook against George H. Moore, Collector of Internal Revenue. Judgment for defendant.

Robert H. McRoberts and E. W. Banister, both of St. Louis, Mo., for plaintiff.

James E. Carroll, U. S. Dist. Atty., and Wayne Ely, Asst. U. S. Dist. Atty., both of St. Louis, Mo., for defendant.

FARIS, District Judge. This case was submitted to the court sitting as a jury, and, a jury being specially waived in writing, the court heard the testimony and the arguments of counsel, and has since considered the briefs filed on both sides.

The facts are somewhat unique, and I confess just a little difficulty with the case. Plaintiff is president of a real estate company doing business here in the city of St. Louis. He is also, of course, a director in that company. He and two others of the directors (of whom there are five in all) made the orders and passed the resolutions to which I shall hereafter refer. The remaining two directors had nothing to do with these orders and resolutions.

Plaintiff and the two directors having to do with the resolution that I shall mention owned 75 per cent. of the capital stock. Twenty-five per cent. is in the hands of the other stockholders, presumably in the hands, among others, of the two directors not taking part in the orders and resolutions to which I have before referred.

[1] In the years preceding March 1, 1913, the date as to which the Income Tax Act took effect—that is, the Act of October 3, 1913 (38 Stat. 114, 166)—plaintiff was the active manager of the corporation of which he is a director and president. The affairs of his corporation seem to have been very successful and profitable. It was deemed by plaintiff and two of the directors that his services for the years 1909, 1910, 1911, and 1912 were such as reasonably to entitle him to additional compensation to that allowed him by the rules and by-laws of the board of directors. No agreement as to the amount of that compensation was ever arrived at by anybody until December, 1913.

Plaintiff, relying, as he says, upon the promise of two directors, became indebted to the company, and this indebtedness was carried on the books of the company as overdrafts. These overdrafts of plaintiff amounted in December, 1913, to about $70,000. In this month and year (plaintiff and two other directors concurring) plaintiff was al-

lowed a credit upon the books of the company for $50,000, leaving the plaintiff owing the company at that time $20,000 on his overdrafts. Although seven years have passed, neither the other two directors nor the stockholders have ever affirmatively acquiesced in this allowance, although plaintiff was given credit for it upon the books of the company in December, 1913, in the sum that I have heretofore stated, $50,000.

In the year 1913 the Holbrook-Blackwelder Real Estate Trust Company (I believe this is the exact style of it) made out its return, as it was required to do by the law then in force, as a basis of assessment against it of an income tax for the year 1913. It may have been, perhaps, in January, 1914, but that cuts no figure in the case. In this return it took credit for the $50,000 that it had allowed to plaintiff on its books, as an expense. It is true that it happened, fortuitously, that the company during the year 1913 had lost $76,000, so that it had to pay no income tax at all. It would not have had to pay it in any event.

Upon this $50,000 so carried to the credit of plaintiff upon the books of his company in 1913, the defendant assessed against him an income tax amounting to, I believe, $990.36. This tax the plaintiff paid. After the usual procedure, he brought suit against the defendant, Moore, in order to secure a refund. The question is whether this tax was correctly or incorrectly assessed against him under the law then in force. I have reached the conclusion that it was correctly assessed against him.

Until December, 1913, and on the 28th of the month, I believe, there had never been an ascertainment of the amount that plaintiff should have from the company as additional compensation; that matter was left undetermined. It is true that he had gotten the money and had spent it in the years preceding the taking effect of the Income Tax Act of October, 1913. Upon the books of the company he owed it overdrafts, not only for the $50,000, but for an amount largely in excess of that sum. Up to that time he had never gotten it, and it was not certain that he ever would get it. But at this time the credit to come to him was finally settled upon and segregated by an order of the board.

[2] It may be said, since only two members of the board (in addition to plaintiff himself) acquiesced in this, that therefore it was no order, and that, since the other two directors and the stockholders have never to this good day acquiesced in it, it was no order. I take it that the company is foreclosed by the fact that they took credit for it when they made their income tax return for the year following the year at which they passed this credit to plaintiff upon the corporation's books.

I am led to the conclusion that I have reached largely by the case of Jackson v. Smietanka (D. C.) 267 Fed. 932, a case recently decided in Illinois, wherein the facts were that Jackson, as receiver for some railroad company, was allowed by order of the court $2,000 per month for a number of years prior to the taking effect of the Income Tax Act of 1918 (Comp. St. Ann. Supp. 1919, §§ 6336⅛a–6336⅛z). When a final settlement came, Jackson, as receiver was allowed $100,000 additional for his services, over and beyond the $2,000 a month that he had been collecting theretofore. It was understood throughout the receiv-

ership that, when the same was finally settled, he was to be allowed additional compensation. The order of the court allowing that additional compensation proportioned that allowance over the years 1914, 1915, 1916, and 1917, in practically equal amounts. Of course, Jackson contemplated paying an income tax; he conceded that, but the question the court had before it was whether Jackson ought to pay according to the law of 1918, or whether he ought to pay according to the law that was in force in 1914, 1915, and so on. The court held that he ought to pay as of the time, and under the law in force at the time the final settlement and final allowance was made.

This Jackson Case is the one that I find nearest to the facts in this case. As I stated in the beginning, the case is a close and difficult one; but I have concluded, both upon the reasoning and under the authority of the Jackson Case, that the judgment should be for the defendant. It is so ordered.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes